MICHAEL P. HAMMOND, ADMINISTRATOR (ESTATE OF JOSEPH W. HAMMOND) *v.* CITY OF WATERBURY (14099)

SHEA, GLASS, COVELLO, BORDEN and F. X. HENNESSY, Js.

Argued May 3—decision released July 16, 1991

*Vincent E. Roche,* with whom, on the brief, were *Joseph A. Hourihan* and *Gregory R. Shettle,* for the appellant (third party defendant Mattatuck Beef Company).

*James K. Robertson, Jr.,* with whom were *Pamela J. Norley* and, on the brief, *Suzanne Martin-Esposito,* for the appellee (defendant).

COVELLO, J. This is an appeal from a judgment of the trial court, following a jury trial awarding the defendant, the city of Waterbury (city), damages by way of indemnification from the third party defendant, Mattatuck Beef Company (Mattatuck), and its driver, the third party defendant Robert Adamovicia, for sums the city paid in settlement of a liability claim arising out of the death of Joseph Hammond. The issues on appeal are whether: (1) a claim for indemnification can be based upon the secondary tortfeasor's stipulated judgment with the injured party; (2) the requirements for a cause of action for indemnification based upon § 3122 of the Waterbury city code were met; (3) the "one-recovery rule" prevented the estate from recovering against the city; (4) there was sufficient evidence that the third party defendants' actions were the cause of the accident; (5) the trial court properly charged the jury on the issue of nuisance; and (6) the trial court improperly failed to submit the third party defendants' interrogatories to the jury. We affirm the judgment.

The jury might reasonably have found the following facts: On May 4, 1984, a delivery truck owned by Mat-

tatuck and operated by its employee, Robert Adamovicia, left the highway on Meriden Road in Waterbury and knocked over two telephone poles. One of the poles had an electrical transformer mounted upon it. Diesel fuel and oil from the truck and approximately thirty-three to thirty-five gallons of fluid from the transformer spilled onto the road, already wet from rain, causing the road surface to become slippery. The Waterbury police and fire departments responded and covered the spill with sand in an effort to soak up the various fluids. The site was inspected twice thereafter. Approximately twenty-six hours later, a pickup truck operated by John Kulmann skidded after hitting the sanded area. The Kulmann truck struck an automobile operated by Joseph Hammond, causing his death.

The Hammond estate sued Kulmann and the city of Waterbury in separate causes of action that were never consolidated. The city impleaded Adamovicia and Mattatuck alleging that Mattatuck and Adamovicia were primarily responsible for the road conditions causing the accident and seeking indemnification for any damages the city might owe the estate. The Hammond estate thereafter agreed to a stipulated judgment with Kulmann for $600,000. The estate then agreed to a stipulated judgment with the city for $75,000. The matter proceeded to trial solely on the city's claim for indemnification from Adamovicia and Mattatuck. The jury returned a verdict in favor of the city for the $75,000 settlement, plus attorney's fees, for a total of $92,727.22. Mattatuck appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and now affirm.

I

Mattatuck first claims that, because the judgment rendered against the city was pursuant to a stipulation, the city failed to prove one of the elements necessary

to establish a cause of action for indemnification based upon § 3122 of the city code.

Section 3122 of the Waterbury city code states: "Whenever any person shall cause any defect in, or . . . any obstruction on, any of the streets of the city, such person shall be held to answer any claim for damages which may be made against [said] city therefor; and, whenever any suit shall be brought against the city for such damages, such person may be cited in to defend the same, in which case no judgment shall be rendered against the city until the execution issued upon the judgment against such person shall have been returned unsatisfied, and, upon the payment of any such judgment by the city, the judgment against such person shall inure to the benefit of the city. . . ."[1]

Mattatuck argues that the stipulation agreed upon by the city and the estate is "consensual" and "arguably collusive" and is not the type of "judgment" required by § 3122. The gravamen of Mattatuck's argument is that a stipulated judgment cannot provide the basis for a recovery under § 3122. We disagree.

There are no cases suggesting that an indemnification claim brought pursuant to § 3122 cannot be based upon a stipulated judgment, and we see no reason to impose such a limitation on a statutory cause of action. "[C]ourts must construe statutory provisions as they are written." *Zachs* v. *Groppo,* 207 Conn. 683, 690, 542 A.2d 1145 (1988). Section 3122 itself contains no language excluding stipulated judgments and in the absence of ambiguity, "courts cannot, by construction, read into statutes provisions which are not clearly stated." *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979).

---

[1] The Waterbury city code derives its authority from 12 Spec. Acts 443, No. 329, § 25, and was reenacted in its present form in 21 Spec. Acts 634, No. 499, § 249.

Mattatuck also claims that § 3122 provides that in the event a third party is cited in to defend, then a judgment "shall" first be rendered against the third party and returned unsatisfied before a judgment can enter against the city. Mattatuck argues that this provision is mandatory by reason of the use of the word "shall." Mattatuck argues that because a judgment against the third party defendants was never rendered in favor of the Hammond estate, the requirements of § 3122 have not been met and the city is barred from seeking indemnification. We agree that the procedures set forth in § 3122 were not complied with fully, but conclude that the failure to do so does not defeat the plaintiff's cause of action.

The first portion of § 3122 states unequivocally that when a person has caused an obstruction in a street, "such person shall be held to answer any claim for damages . . . [made] against [the] city therefor." It is this language that creates an independent, statutory cause of action for indemnification. In a separate clause set off by a semicolon, § 3122 then sets forth an optional procedure pursuant to which, if an action is brought against the city, "such person *may* be cited in to defend the same." (Emphasis added.) Section 3122 continues, stating that if the third party defendant is cited in, then "no judgment shall be rendered against the city until . . . the judgment against [the third party is] returned unsatisfied" and that the city, after paying this judgment, will have recourse against the third party. The city elected, as permitted by this latter part of § 3122, to cite in the third party defendants in the underlying action. The issue then becomes whether the failure of the parties to comply fully with the statutory requirements of this second part of § 3122, by first obtaining a judgment in favor of the Hammond estate against Mattatuck and Adamovicia, defeats the city's underlying cause of action established under the first clause

of § 3122. This, in turn, depends on whether the procedures set forth in the second clause are mandatory or directory. If they are mandatory, then failure to comply with them defeats the city's entire cause of action under § 3122. If they are directory, then the city's underlying claim is preserved.

As earlier noted, the relevant portion of § 3122 is divided into two sections set off by a semicolon. The first establishes the independent statutory cause of action for indemnity. The second does not create a cause of action but establishes only a procedural mechanism to be used in the event, as here, that the city elects to cite in the primary tortfeasor. In addition this second section uses the word "may" suggesting that the entire clause is optional. Finally, "[t]he most satisfactory test of whether a [provision] is mandatory or merely directory 'is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words whether it relates to [a] matter of substance or to [a] matter of convenience.' *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345 [1951]. *Gallup* v. *Smith,* 59 Conn. 354, 358, 22 A. 334 [1890]. Where the thing required to be done is one of substance the statutory provision is mandatory. *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591 [1963]; *Blake* v. *Meyer,* 145 Conn. 612, 616, 145 A.2d 584 [1958]. However, '[l]egislative provisions designed to secure order, system and dispatch in proceedings are ordinarily held to be directory where, as here, they are stated in affirmative terms or, to express it differently, are unaccompanied by negative words.' *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789 [1956]. Such a statutory provision is one which prescribes what shall be done *but does not invalidate action upon a failure to comply.*" (Emphasis added.) *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75 (1969).

The latter part of § 3122 is cast in affirmative words, contains no penalty for noncompliance and purports only to establish a permissive procedure for the orderly processing of claims for indemnification in the event a third party is cited in, by directing that the judgment should be rendered against the third party defendant first. We conclude that the terms of the second clause of § 3122 are directory, and not mandatory, and that failure to comply fully with its requirements does not defeat the city's underlying cause of action.

## II

Mattatuck next claims that the requirements of § 3122 should be merged with the principles set out in *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 207 A.2d 732 (1965). In *Kaplan,* we held that there was an exception to the common law rule prohibiting contribution from among joint tortfeasors if the indemnitee could prove that: (1) the indemnitor was negligent; (2) such negligence was the direct cause of the damages; (3) the indemnitor was in control of the situation to the exclusion of the indemnitee; and (4) the indemnitee did not know or have reason to know of the indemnitor's negligence and could reasonably have relied on the indemnitor not to be negligent. Id., 416. Mattatuck argues that there were no facts from which the jury could have concluded that it and Adamovicia, as the putative indemnitors, were ever in control of the area or that the city, as indemnitee, did not have notice of the obstruction.

Mattatuck's argument that § 3122 actions are to be merged with the test set out in *Kaplan* is without merit. The *Kaplan* case established a narrow exception to the general *common law* principle that there is no contribution among joint tortfeasors. Section 3122, however, establishes an independent, *statutory* cause of action for indemnification. There is no suggestion in § 3122

that the legislature intended it to be limited by the separate common law exception. In the absence of an indication from the legislature that a narrow exception to a common law rule is to be applied to a statutory indemnification provision, we decline independently to do so and conclude that the trial court correctly permitted the jury to decide the city's claim of indemnity based solely upon § 3122.[2]

## III

Mattatuck next claims that the Hammond estate should not have recovered from the city because the Hammond estate had already obtained a full recovery from Kulmann. "[A]n injured party is entitled to full recovery only once for the harm suffered." *Peck* v. *Jacquemin,* 196 Conn. 53, 70 n.19, 491 A.2d 1043 (1985); *Gionfriddo* v. *Gartenhaus Cafe,* 211 Conn. 67, 71, 557 A.2d 540 (1989). For a recovery from a second tortfeasor to be barred, however, it must be shown that the injured party has received a *full* recovery. *Gionfriddo* v. *Gartenhaus Cafe,* supra, 75–76.[3]

---

[2] Mattatuck makes several additional claims relative to the recovery based upon § 3122 of the Waterbury city code. Mattatuck claims that there was no evidence that the sand and oil was an "obstruction" within the meaning of § 3122. We find this claim to be without merit. Examination of the record discloses that there was ample photographic evidence and trial testimony to support the jury's conclusion that an obstruction existed.

Mattatuck also claims that the case law indicates that § 3122 "has been applied exclusively to defects in sidewalks or situations involving pedestrians" and that it is inconsistent to apply it to the facts of this case. This argument is also without merit. No case has been brought to our attention stating that the statute applies *only* to sidewalks. Furthermore § 3122, by its terms, applies "[w]henever any person shall cause . . . any obstruction on, any of the *streets* . . . ." (Emphasis added.)

[3] The Restatement (Second) of Judgments, § 50, comment (d), states that "when a judgment is based on *actual litigation* of the measure of a loss, and the judgment is thereafter *paid in full,* the injured party has no enforceable claim against any other obligor . . . ." (Emphasis added.) In this case, the issue of damages was *never litigated* in the proceedings between Kulmann and the Hammond estate and therefore the question of whether the stipulated judgment with the estate represented a full recovery was properly before the jury here.

The question whether the stipulated judgment between the Hammond estate and Kulmann represented a full and complete recovery was fully litigated at trial. Both parties had ample opportunity to introduce evidence and did so. The jury had before it evidence that the deceased was only nineteen. He was an energetic young man with some college experience, was working a number of jobs and, on the day he was killed, had applied for a manager's position at an auto parts store. The jury also might reasonably have relied upon an economist's report, introduced into evidence, that calculated the potential economic loss to the estate at $1,000,000. " 'Assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant.' *Slabinski* v. *Dix,* 138 Conn. 625, 628–29, 88 A.2d 115 (1952). 'The amount of the award is a matter within the province of the trier of the facts.' *Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703, 109 A.2d 589 (1954)." *Seals* v. *Hickey,* 186 Conn. 337, 352, 441 A.2d 604 (1982). Based upon the evidence before it, we cannot conclude that it was unreasonable for the jury to decide that the $600,000 settlement with Kulmann represented less than full value for the loss suffered.

## IV

Mattatuck next claims that there was insufficient evidence as a matter of law that its actions were the cause of the accident because there was "no evidence that the oil itself on the road contributed to the Hammond accident, mainly because it had been absorbed by the sand." There was, according to Mattatuck, "never any causal link made between the Mattatuck accident and the subsequent Hammond loss."

" 'To be entitled to damages a plaintiff must establish a causal relationship' . . . . This causal connec-

tion must rest upon more than surmise or conjecture." *Aspiazu* v. *Orgera,* 205 Conn. 623, 630, 535 A.2d 338 (1987). The jury had before it ample evidence concerning the road conditions from the time the Mattatuck truck overturned until the Hammond accident. Several witnesses testified as to the character and amount of fluids spilled. Evidence was introduced indicating that thirty-three to thirty-five gallons of transformer fluid and significant amounts of fuel and oil from the truck were spilled on the road. Furthermore, the police report of the road conditions at the time of the fatal accident and several photographs of the scene depicting stains that could reasonably be inferred to be from oil and transformer fluids were introduced as evidence. We conclude that reasonable jurors, based upon the facts before them, could have concluded that the oil and transformer fluid on the road as a result of the Mattatuck accident was a substantial cause of the subsequent Hammond accident.

## V

Mattatuck next claims that the trial court improperly instructed the jury on the estate's claim that the condition on the road constituted a nuisance. Specifically, Mattatuck argues that in order for it to be held liable to the city, it was necessary that the city first be found liable to the Hammond estate. The Hammond estate had claimed that the city had created a nuisance. Mattatuck now argues that the charge to the jury was deficient in that the elements required to establish a nuisance were not described to the jury.

"To establish a nuisance four elements must be proven: (1) the condition . . . had a natural tendency to create danger . . . (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries."

*Filisko* v. *Bridgeport Hydraulic Co.,* 176 Conn. 33, 35–36, 404 A.2d 889 (1978). Examination of the record discloses that the trial court, in its charge to the jury, correctly and concisely stated that, in order to find a nuisance, the city must show that there was "a condition . . . which has a natural tendency to create danger," that it was "continuous," "unreasonable" and "caused Joseph Hammond's death." We conclude that this instruction was a correct and adequate statement of the law and that Mattatuck's claim is therefore without merit.

## VI

Mattatuck finally claims that the trial court failed to submit its proposed interrogatories to the jury or to submit the court's own. Mattatuck argues that, due to the complexity of the issues involved, failure to submit interrogatories was improper.

"[T]he use of interrogatories has long been accepted practice in this state, and . . . their use to avoid the implications of a general verdict has long been favored by this court." *Gaulton* v. *Reno Paint & Wallpaper Co.,* 177 Conn. 121, 125, 412 A.2d 311 (1979). "Although ordinarily the submission of interrogatories rests within the court's discretion, where the complaint contains two or more counts, or when two or more causes of action are incorporated in a single count a party has the right to save himself from the implication of a general verdict by seeking from the jury answers to apt and proper interrogatories." *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* 189 Conn. 518, 527, 457 A.2d 656 (1983).

The city's substitute third party complaint against the third party defendants contained only one count, i.e., a claim for indemnity under § 3122 of the Waterbury city code. There was therefore no mandatory requirement that the trial court submit interrogatories

and, therefore, the decision to submit them was within the trial court's discretion. Some of the proposed interrogatories were wholly inappropriate. Question 4 of the proposed interrogatories asked whether the city was "secondarily passively involved in creating . . . the obstruction" in the road. Question 6 asked whether the city's loss was "proximately caused by the active-primary negligence" of the third party defendants. It is apparent that the interrogatories therefore attempted to introduce elements of the *Kaplan* test, which we have already stated were inapplicable to this statutory claim for indemnification under § 3122. The trial court, having examined the proposed interrogatories, concluded that they were "confusing" and "[did] not track the . . . . issues [submitted] . . . for the jury" and we agree in that they ask the jury to consider legal principles not applicable to the facts in issue. We therefore find no abuse of the trial court's discretion in refusing to submit the proposed interrogatories.

The judgment is affirmed.

In this opinion the other justices concurred.