[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
CT Page 4933
By a two count complaint dated January 8, 1993, Plaintiff Karen Chapman filed a product liability suit against co-defendants General Motors, Inc. ("General Motors") and M.J. Sullivan Chevrolet, Buick, Geo, Inc. ("MJ Sullivan").
According to the complaint, the facts are as follows. On April 21, 1990, Chapman was driving a 1986 Chevrolet Sprint that had been manufactured by General Motors and later purchased from M.J. Sullivan. While stopped on Route 184 in Ledyard, Connecticut to make a left hand turn onto Haley Road, Chapman was struck from behind by a 1985 Plymouth Horizon traveling at approximately 20 to 30 miles an hour. As a result of the rear-end collision, Chapman claims that her Sprint's seatback, suddenly and without warning, failed. Chapman then lost control of the vehicle. Because of the loss of control, Chapman's car turned 360 degrees into approaching traffic. Chapman was hit again by a 1984 SAAB that was traveling westbound on Route 184. This second collision pushed Chapman's car back into the 1985 Plymouth Horizon causing her vehicle to spin again until it finally came to rest, after hitting a guardrail, on the westbound side of Route 184.
Because of the seatback failure, Chapman claims that she was severely injured. Chapman allegedly suffered various injuries including a "fracture of the right tibiofibula, angulation and subluxation of the C4-5 vertebrae, spinous fracture . . . and numerous abrasions, lacerations, and bruises. (Plaintiff's complaint, count 1, paragraph 8). Chapman seeks monetary damages from both defendants under General Statutes § 52-572m, Connecticut's Product Liability statute, because of the alleged defective condition of the seatback of her 1986 Chevrolet Sprint.
By a motion dated November 17, 1994 and filed with the court on November 21, 1994, General Motors and M.J. Sullivan moved for summary judgment. According to their motion, defendants claim that there are no genuine issues of material fact in dispute and that they are entitled to summary judgment as a matter of law.
The defendants assert that Chapman has already fully litigated the issue of her damages and received just compensation for them as a result of an arbitration hearing and award that was paid by her insurance carrier, GEICO, in CT Page 4934 the amount of $497,486.65 under the underinsurance clause of her policy. Because the arbitration panel found that amount to be the "net sum" of Chapman's "fair, just, and reasonable damages," General Motors and M.J. Sullivan assert that Chapman is collaterally estopped from seeking any "enhanced damages" in a subsequent product liability action for damages she allegedly would not have suffered but for the alleged defect in the seatback of her car.
Chapman opposes the defendants' motion for summary judgment claiming that a genuine issue of material fact exists. In her brief in opposition to the motion for summary judgment, Chapman asserts that after the collision she collected $20,000, the liability limit, from the insurance carrier of the person who initially rear-ended her. Thereafter, Chapman submitted a demand for arbitration pursuant to the underinsured motorist coverage provisions of her own policy with GEICO. Chapman proffers that the arbitration panel was fully aware that the maximum amount that she could collect under her underinsured motorist coverage was $600,000. Thus, Chapman submits, and her counsel hired to proceed in front of the arbitration panel avers that, "no evidence was presented which would permit the panel to distinguish between those injuries, damages, and losses caused by the motor vehicle accident with Stephen Kepple [the driver of the car that rear-ended Chapman's vehicle] versus those injuries, damages, and losses arising out of [Chapman's] seatback failure." (Affidavit of Linda Mariani, paragraph 6).
Both parties have submitted briefs in support of their respective positions. In addition, Chapman has attached the affidavit of Attorney Mariani. The defendants have submitted extensive documentation in support of their motion for summary judgment including a copy of the transcripts of the arbitration hearing and the panel's final decision.
DISCUSSION
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, CT Page 4935 279, 567 A.2d 829 (1989).
"Although the party seeking summary judgment has the burden of showing the nonexistence of a material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted.) Scinto v. Stamm, 224 Conn. 524,530, 620 A.2d 99 (1993).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Suarezv. Dickmont Plastics, Corp., 229 Conn. 99, 105-06,639 A.2d 507 (1994).
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) State v. Goggin, 208 Conn. 606,616, 546 A.2d 250 (1988).
"A `genuine issue' has been variously described as a `triable,' `substantial' or `real' issue of fact . . . and has been defined as one which can be maintained by substantial evidence. Hence, the `genuine issue' aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Citations omitted; internal quotation marks omitted.) United Oil Co. v.Redevelopment Commission, 158 Conn. 364, 378-79, 260 A.2d 596
(1969).
"The doctrine of res judicata and collateral estoppel protect the finality of judicial determination, conserve the time of the court, and prevent wasteful relitigation . . . Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior CT Page 4936 suit. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Citation omitted; internal quotation marks omitted.) Haynes v. YaleNew Haven Hospital, 8 Conn. L. Rptr. 353 (February 10, 1993, Stanley, J.). "The satisfaction of [an] arbitration award constitutes a satisfaction of a judgment in an action in which the measure of the plaintiff's loss was actually litigated."Neils v. Red Dog Saloon Cafe, Inc., 7 Conn. L. Rptr. 121 (July 21, 1992, Shea, S.T.R).
"An injured party is entitled to full recovery only once for the harm suffered. For a recovery from a second tortfeasor to be barred, however, it must be shown that the injured party has received a full recovery." (Emphasis in original). Hammond v. Waterbury, 219 Conn. 569, 577,594 A.2d 939 (1991). "[T]he general rule [is] that there can be but one satisfaction of damages, and where judgments are rendered against different persons for the same cause of action, payment of one is a satisfaction of all." Gionfriddo v.Gartenhaus Cafe, 211 Conn. 67, 74-5. 557 A.2d 540 (1989).
The sole issue in the current motion for summary judgment is whether the arbitration award made to Chapman under her underinsured motorist insurance constituted full, fair, just and reasonable compensation in that it also took into consideration those injuries she suffered as a result of the alleged defective manufacture of her seatback by General Motors.
In her brief in opposition to the motion for summary judgment, Chapman states that at the arbitration hearing she, through counsel, did not distinguish between those injuries that she suffered as a result of the collision and those that she suffered from the alleged seat defect. Chapman claims that there was no need to raise the distinction at that time because the panel's main concern was her underinsurance claim. In a sworn affidavit, Chapman's counsel before the arbitration panel, Attorney Linda Mariani, avers that she did not ask the panel to consider those damages that resulted from the defective seatback.
The defendants, in support of their motion, also assert that Chapman made no distinction between the injuries she CT Page 4937 suffered as a result of the collision and those from the alleged defect. Defendants, however, use this fact to support their motion for summary judgment by claiming that because no distinction was made, the arbitration panel fully heard and litigated the total amount of damages available to the plaintiff as a result of the collision and the defective seatback. The defendants point out, and the transcript supports, that Chapman presented extensive evidence regarding her past and future medical expenses, pain and suffering, past and future lost wages and her degree of disability.
Thus, defendants further assert that the arbitration panel had all the evidence before it concerning the injury to the plaintiff, including the damages from the seatback defect, and based its award accordingly.
According to the defendants, the arbitration panel awarded total gross damages of $625,000 which was $25,000 more than the policy limit.[1] Therefore, defendants claim that this fact implies that the arbitration panel looked beyond the confines of the total amount available under the GEICO underinsured policy clause, and did not artificially conform damages to the maximum amount available. Chapman disputes this and says that the panel was fully aware of the policy limit and of payments already made to Chapman from the sources discussed in footnote 1. Based on the "neatness" of the arbitration award, Chapman proffers that an inference can be made that the panel never considered the full, fair, and just damages suffered by the plaintiff and merely attempted to exhaust the GEICO policy limits.
Viewing the evidence in a light most favorable to the non-moving party, the court finds that a genuine issue of material fact exists as to whether the arbitration panel considered the damages suffered from the alleged defect in the car when it awarded monies to Chapman. The court has carefully read the transcripts from the arbitration hearing and notes that the seatback was briefly mentioned during the testimony of Kepple when he stated that upon approaching her hit car that there "were groceries all over the back seat of the area. Her seat had laid down flat and she was just laid out on top of her seat." (Defendant's exhibit D, Jan. 15, 1992, pp. 4-5). Although this same record reflects extensive testimony from doctors regarding Chapman's treatment and condition, it is unclear whether the arbitrators also CT Page 4938 considered the seatback injuries in awarding the damages. The panel's final decision also does not make any such distinction.
Thus, a genuine issue of material fact exists as to whether the arbitration award fully compensated Chapman for her injuries.
Therefore, the defendants' motion for summary judgment is hereby denied.
Hurley, J.