[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, the plaintiff Funeral Home is suing for the unpaid portion of its bill which it contends was originally $5,111.80 and of which the defendants have paid only $2,000.00. The complaint seeking damages of $3,111.80 is in two counts: one based on an express oral contract and the other alleging unjust enrichment. The defendants, in their answer have included a special defense and a counterclaim. The special defense claims for reasons hereinafter stated that whatever contract existed violated public policy and that the oral contract between the parties, if found to be valid, had a price or only $3,000.00 to $3,200.00 of which $2,000.00 has been paid. In the counterclaim, the defendants allege that in dealing with them, the plaintiff committed an unfair trade practice in violation of Gen. Stat § 42-110b et seq.
At the trial, testimonial evidence was provided by the plaintiff's president Brian Havens and by the defendants. Their respective testimonies differed substantially thus posing a difficult problem in credibility for the court. Zapolsky v.Sacks, 191 Conn. 194, 201 (1983). One item of dispute, however, involved the date on which the $2,000.00 had been paid. Mr. Havens testified that this sum was paid in cash by Mr. Sortito in the afternoon of August 15, 1992. Michael Sortito's testimony was CT Page 11930 that he paid $2,000.00 in cash on September 14, 1992 to a woman at the Funeral Home who identified herself as Mrs. Havens and who wrote "9-14-92 $2,000.- and $3,111.80" as the balance on the bill. Mrs. Havens, the wife of Brian Havens is the bookkeeper of the plaintiff and was available to testify when the trial was conducted. She was not called as a witness and the defendants asked the court, as permitted by Secondino v. New Haven Gas Co.,147 Conn. 672, 675 (1960), to infer that her testimony would have been adverse to the plaintiff's cause.
There are two requirements for an inference under theSecondino rule. The absent witness must be available to testify. And the absent witness must be one who would naturally be produced. This means a witness who, by reason of a relationship to the party or to the issues or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce. Gulack v.Gulack, 30 Conn. App. 305, 314 (1992). Both of these requirements having been satisfied, the court applies the Secondino inference and accordingly finds the facts set forth below principally from the testimony of Michael Sortito.
 I
In July of 1992, Lillian Paier, the mother of Cynthia Sortito and mother-in-law of Michael Sortito was terminally ill with cancer and had been admitted to Connecticut Hospice in Branford. A few days later, Michael Sortito went to see Brian Havens at the plaintiff's place of business. They discussed a funeral that would be provided by the State using Title 19 funds and Michael Sortito expressed distaste for it. Brian Havens said that he would provide a nice funeral for $3,000.00 to $3,200.00.
When made, the arrangements between Brian Havens and Michael Sortito were completely oral. The next time they spoke was in the morning on August 15, 1992 when Sortito called and notified Havens that Mrs. Paier had died. In the telephone conversation, Sortito asked if the bill would still be $3,000.00 to $3,200.00. Havens answered "yes". Later in the afternoon on August 15, 1992, Havens met with Michael and Cynthia Sortito. A casket was selected and all arrangements were made but there was no mention of total cost at this time.
Gen. Stat. § 20-230b requires that at the time funeral arrangements are completed and prior to the time of rendering CT Page 11931 service or providing merchandise, the funeral director shall furnish a written statement setting forth prices for various items and methods of payment. Such a statement was introduced in this case showing that the estimated total funeral billing would be $5,135.00 The court however, from the testimony of Michael Sortito, finds that the statement was not prepared when required by the statute, was never signed by the defendants and was never even shown to them until offered in evidence.
When the plaintiff's invoice in the amount of $5,111.80 was received, Michael Sortito went to the Funeral Home on September 14, 1992. At that time, Brian Havens was unavailable. Sortito told the woman who introduced herself as Mrs. Havens about the discrepancy in the bill. She took the $2,000.00 in cash that he offered, and as heretofore said, receipted the bill for that amount, wrote the date that the money was received and wrote the new balance. Mrs. Havens told Michael Sortito that Brian Havens would telephone him. Brian Havens, however, never called. Instead in December, 1992, Sortito received a certified letter requesting that the balance of $3,111.80 be paid and asking him to contact Havens within forty eight hours of receipt of the letter.
In December, 1992, after receiving the letter, Sortito telephoned Havens who, again, was unavailable. The person at the Funeral Home to whom Sortito spoke said that Havens would get back to him but that never happened. Instead, this suit was instituted in May, 1993.
Aside from the dispute as to the amount owed, the defendants were completely satisfied with the plaintiff's services. In contesting this action, the defendants, to date, have paid $1,750.00 toward legal fees. Their counsel estimated a total attorney's fee of $4,425.00.
A few more factual findings have been made. They appear in subsequent sections of this memorandum.
 II
Having accepted mainly the defendants' version of the transaction at issue, the court must rule on the validity of the special defense and counterclaim. Providing funeral services is a heavily regulated business.E.g. see Gen. Stat. §§ 20-207 through 20-233,38a-464, 42-200 through 42-207. That portion of the special defense alleging that the contract between the CT Page 11932 parties is illegal in toto as violative or public policy raises the question of whether § 20-230b, and § 20-230a as well are mandatory or directory statutes.
To determine whether a specific provision is mandatory or directory, a court should examine a statute's language, its legislative history and its context. Langan v. Weeks, 37 Conn. App. 105,122 (1995). Gen. Stat. §§ 20-230a and 20-230b were enacted in 1977 as sections 1 and 2 of Public Act No. 77-218 "An Act Requiring Funeral Homes To Provide Price Lists Of Services Offered." The third and final section of the public act was an amendment of existing § 20-233 to include violations of the new sections 1 and 2 in its penalty provisions. The court concludes that §§ 20-230a and 20-230b are directory in that although they prescribe what is to be done by funeral directors they do not invalidate action upon failure to comply. Hammond v.Waterbury, 219 Conn. 569, 575 (1991). Parenthetically the penalty provisions of § 20-233 are equally applicable whether the violation is an unauthorized licensing or employment or a failure to provide written price lists or a written estimate of costs. This statutory scheme stands in sharp contrast to some others such as the Home Improvement Act where § 20-429 makes a contract void and unenforceable unless it is written and contains required particulars and the Home Solicitation Sales Act where a contract is ineffective if not signed and dated by the buyer or if the seller fails to furnish what § 42-135a requires.
The special defense is sustained, however to the extent that it limits the defendants' ability to $3,200.00 of which $2,000.00 has already been paid.
 III
CUTPA, the acronym for the Connecticut Unfair Trade Practices Act, provides a cause of action where a person suffers an ascertainable loss of money or property as a result of an unfair or deceptive act or practice in trade or commerce. Gen. Stat. §§ 42-110b(a), 42-110g(a). The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action for actual damages or equitable relief. There is no need to allege or prove the amount of ascertainable loss. Hinchliffe v. American Motors Corporation, 184 Conn. 607,614, 615 (1981).
Here the claimed unfair or deceptive act is the failure to CT Page 11933 provide a written statement setting forth prices before rendering services as directed by §§ 20-230a and 20-230b. The ascertainable loss is that the defendants have been charged and are being sued for more than they agreed to pay. A reading of the plaintiff's pre-trial brief demonstrates some confusion between ascertainable loss and actual damages.
Clearly the parties were in a consumer relationship although a buy-sell connection is not essential under CUTPA. LarsenChelsey Realty Co. v. Larsen, 232 Conn. 480, 496-97 (1995).
If the agreement between the parties were a funeral service contract as defined in § 42-200 (a present payment for future funeral services), the facts that have been found would be deemed a CUTPA violation by § 42-206. Generally, however, whether a practice is unfair or deceptive is a question of fact. EdartTruck Rental Corporation v. B. Swirsky Co., 23 Conn. App. 137,145 (1990). In determining the question, Connecticut courts are directed to be guided by interpretations given by the Federal Trade Commission and the federal courts to the Federal Trade Commission Act § 5(a)(1) (15 U.S.C. § 45(a)(1)). Gen. Stat. §42-110b(b). The "cigarette rule"[1] promulgated by the FTC is now the prevailing norm used by Connecticut courts in deciding when a practice is unfair. Cheshire Mortgage Service, Inc. v.Montes, 223 Conn. 80, 105 (1992).
Pursuant to its rule-making authority, the FTC has set standards for Funeral Industry Practices in16 C.F.R. § 453.1-453.9. Section 453.2 makes the furnishing of funeral goods and services without accurate written information as to the cost for each specific item before such goods are purchased or services rendered an unfair or deceptive act or practice. The wordages of16 C.F.R. § 453.2 and Gen. Stat. § 20-230a and § 20-230b
are substantially similar. By following the federal regulation the court can easily conclude from the facts of the case that the plaintiff's conduct violated CUTPA. Moreover common sense dictates a finding that when there is agreement as to price, the failure to provide a list, as required by § 20-230b, which would have memorialized that price and then charging and suing for a higher price constitutes unfair or deceptive acts or practice.
As permitted by Gen. Stat. § 42-110g(a) and (d), the defendants seek actual and punitive damages as well as an attorney's fee. In the court's view, the defendants' satisfaction CT Page 11934 with the plaintiff's services eliminates punitive damages. Further, aside from the amount paid and the amount owed and to be owed for counsel fees, no evidence was offered from which the court could assess damages. See A. Secondino Son, Inc. v.LoRicco, 215 Conn. 336, 343-44 (1990). The court finds that the defendants because of the plaintiff's actions have become indebted to their attorney, based upon his affidavit in the amount of $2,630.00[2]; a figure that is lower than the value of the services that were performed. See Bizzoco v. Chinitz,193 Conn. 304, 310 (1984). The defendants, as CUTPA victors, are also entitled to an attorney's fee based upon the reasonable value of their lawyer's work. Gen. Stat. § 42-110g(d). The court takes the opportunity to make the defendant whole by awarding $1,200.00 as a reasonable attorney's fee.
 IV
Judgment is rendered in favor of the plaintiff on the complaint in the amount of $1,200.00. Judgment is rendered in favor of the defendants on the counterclaim for $3,830.00 (damages of $2,630.00 and attorney's fee of $1,200.00). The judgments are set off against each other for a net recovery to the defendants of $2,630.00. As the "prevailing party" the defendants are also entitled to taxable costs.