CHRISTOPHER N. BURGESS *v.* STATE OF CONNECTICUT

RICHARD F. PIOTROWSKI *v.* STATE OF CONNECTICUT

Superior Court, Judicial District of New Britain

File Nos. CV-03-0520679S, CV-03-0520681S

Memorandum filed January 8, 2007

*Gary Constant*, for the plaintiff in the first case.

*Gaffney, Kane & Vollmer, PC*, for the plaintiff in the second case.

*Michael R. Bullers*, assistant attorney general, with whom was *Richard Blumenthal*, attorney general, for the defendant in both cases.

SCHUMAN, J. The principal issue in these two cases is whether the state claims commissioner has authority to waive the defendant state of Connecticut's sovereign immunity in suits against the state for money damages alleging wilful and malicious misconduct. The court holds that the claims commissioner does have that authority.

I

Unfortunately, these two matters date back to 1994. On June 10, 1994, the plaintiffs, Christopher N. Burgess and Richard F. Piotrowski in the first and second cases, respectively, sustained injuries when they fell off a cliff at Sunset Rock State Park in Plainville. In June, 1995, they filed claims with the state claims commissioner seeking permission to sue the state for money damages. Plaintiff Piotrowski alleged that the state acted "will-

fully and/or maliciously," while plaintiff Burgess alleged that his injuries were caused by the "negligence and carelessness and/or the willful or malicious acts of the State . . . ." In November, 2001, the claims commissioner issued a memorandum of decision denying permission to sue.[1]

The commissioner found the following facts. There is no admission or other fee to enter the park. A sign at the park provided notice that the park closed at sunset. Another sign stated: "Danger Cliff, Natural Hazard." The plaintiffs gained entry through a chain-link fence that was partially or fully knocked down on the date of the accident. The state department of environmental protection had, in previous years, repaired or replaced the fence and was aware of at least one other incident in which a person fell from the cliff located on the opposite side of the fence.

The commissioner also found that the plaintiffs had been to the park before, were aware of the closing time and were familiar with the presence and location of the cliff. One night in May, 1994, the Plainville police asked the plaintiffs to leave the park. Earlier in the evening of June 10, 1994, the plaintiffs and a third person went to the park and consumed from three to six beers. The plaintiffs returned to the park at 10:15 p.m., when the accident occurred.

The commissioner ruled that, because there was no admission fee to the park and because the state would have the same defenses as a private person, the state would have a defense under the recreational use immunity statute.[2] The commissioner then ruled that the facts

---

[1] The commissioner denied the state's motion for summary judgment in January, 1997. It is not clear why it then took over four and one-half years to reach the merits.

[2] General Statutes § 52-557g (a) provides: "Except as provided in section 52-557h, an owner of land who makes all or any part of the land available to the public without charge, rent, fee or other commercial service for recreational purposes owes no duty of care to keep the land, or the part

did not support a finding of wilful conduct by the state that would constitute an exception to that immunity.[3] Accordingly, the commissioner concluded that the plaintiffs had not presented a just claim and denied permission to sue.

On April 19, 2002, pursuant to General Statutes § 4-159, the General Assembly rejected the finding of the claims commissioner and granted permission to sue.[4] The resolution provided: "That the recommendation of the Claims Commissioner, file numbers 15853 and 15854 of said commissioner that no award be granted to Christopher N. Burgess and Richard Piotrowski on their claims against the state in excess of seven thousand five hundred dollars and that permission to sue be denied, is rejected and Christopher N. Burgess and Richard Piotrowski are authorized to institute and prosecute to final judgment an action against the state to recover

thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes."

General Statutes § 4-160 (a) provides: "When the Claims Commissioner deems it just and equitable, the Claims Commissioner may authorize suit against the state on any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable."

[3] General Statutes § 52-557h provides: "Nothing in sections 52-557f to 52-557i, inclusive, limits in any way the liability of any owner of land which otherwise exists: (1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; (2) for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that, in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for the lease shall not be deemed a charge within the meaning of this section."

[4] At the time, General Statutes (Rev. to 2001) § 4-159 provided in relevant part: "The General Assembly may grant the claimant permission to sue the state under the provisions of this section when the General Assembly deems it just and equitable and believes the claim to present an issue of law or fact under which the state, were it a private person, could be liable."

This language is now codified in General Statutes § 4-159 (c).

damages as compensation for personal injuries alleg-
edly suffered by them on June 10, 1994. Such action
shall be brought not later than one year from the date
of the final adoption by the General Assembly of this res-
olution."

The plaintiffs filed suit on or about April 17, 2003.
For reasons that are unclear, the Burgess file reflects
no activity between July, 2003, and July, 2006, while
the Piotrowski file reveals no activity between August,
2003, and February, 2005. The state filed a motion to
dismiss in *Piotrowski* in April, 2005, but, also for rea-
sons unknown to the court, the motion was not argued
until December 18, 2006. At that time, the court also
heard argument on the motion to dismiss in *Burgess*,
which the state filed on November 21, 2006.

II

Each complaint includes counts alleging negligence,
wilful negligence, wilful and malicious conduct, and
nuisance. The state's principle argument is that the
claims commissioner had authority to grant permission
to sue only for simple negligence and, therefore, the
legislature could and did do no more than that. The
state accordingly moves to dismiss those portions of the
complaint that allege wilful misconduct and nuisance.[5]

The state relies on two general points. The first is
the doctrine of sovereign immunity. The doctrine of
sovereign immunity implicates the subject matter juris-
diction of the court and, therefore, is a basis for granting
a motion to dismiss. See *Miller* v. *Egan*, 265 Conn. 301,

---

[5] In the Burgess complaint, count one alleges both simple negligence and
wilful negligence. The state's motion seeks to dismiss only those portions
of this count alleging wilful negligence. The state offers no authority for
such a surgical motion to dismiss. In view of the conclusion reached here,
the court need not address this issue further.

313, 828 A.2d 549 (2003). Under the doctrine, the state is "immune from suit unless, by appropriate legislation, it authorizes or consents to suit." (Internal quotation marks omitted.) *Mahoney* v. *Lensink*, 213 Conn. 548, 555, 569 A.2d 518 (1990). "[S]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . ." (Citation omitted; internal quotation marks omitted.) *Babes* v. *Bennett*, 247 Conn. 256, 262, 721 A.2d 511 (1998).

The second point is the applicable legislation. General Statutes § 4-165 (a) provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter." The state reasons that § 4-165 and General Statutes § 4-160; see footnote 2; create a statutory scheme whereby a person would present a negligence claim to the claims commissioner under § 4-160 while a claimant who alleges aggravated misconduct, such as "wanton, reckless or malicious" behavior, should file suit against the state officer or employee individually.[6] The state adds

---

[6] The parties for various strategic purposes have attempted vainly to distinguish between wilful negligence, as alleged in portions of the complaints, and "wanton, reckless or malicious" behavior. Our Supreme Court has stated that the concepts of "wanton and reckless conduct, on the one hand, and wilful, intentional and malicious conduct, on the other" are "indistinguishable" "at least in the context of common-law tort actions . . . ." *Elliott* v. *Waterbury*, 245 Conn. 385, 415, 715 A.2d 27 (1998). The court has also observed that the conduct described as "wanton, reckless or malicious" in § 4-165 has the same meaning as when used in the common-law context. See *Shay* v. *Rossi*, 253 Conn. 134, 181–82, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003); *Hultman* v. *Blumenthal*, 67 Conn. App. 613, 624 n.12, 787 A.2d 666, cert. denied, 259 Conn. 929, 793 A.2d 253 (2002). Thus, the parties' attempts to create theoretical distinctions among these concepts is an exercise in futility.

that an exception to the jurisdiction of the claims commissioner exists for "claims upon which suit otherwise is authorized by law including suits to recover similar relief arising from the same set of facts"; General Statutes § 4-142 (2); and that a suit against a state employee individually for wilful misconduct under § 4-165 is the type of similar suit to which the exception refers.

The state's interpretation of these statutes is a plausible but not exclusive one. An alternative approach focuses on the expansive language used in the claims authorization statutes. Section 4-160 (a) provides without limitation that suit against the state may be authorized on "any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable." The term "claim" is also broadly defined to include "a petition for the payment or refund of money by the state or for permission to sue the state . . . ." General Statutes § 4-141.[7] It is thus certainly reasonable to interpret the phrase "any claim" in § 4-160 (a) to mean exactly that.

The resolution of this statutory uncertainty derives from several decisions of our appellate courts, which have held that suits for money damages against the state based on alleged intentional or other aggravated misconduct must obtain initial authorization from the claims commissioner. The leading case is *Miller* v. *Egan*, supra, 265 Conn. 301. In *Miller*, the plaintiff sued the state and state officers for both equitable and monetary relief, alleging false imprisonment, civil conspiracy and violations of constitutional rights. Id., 306 n.7. The

---

[7] In addition, the exception to the claims commissioner's jurisdiction found in § 4-142 (2) may well refer to statutes that explicitly authorize suit against the state. See, e.g., General Statutes § 4-61 (a) (authorizing those who have entered into public works projects with the state to "bring an action against the state"); see *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 85, 818 A.2d 758 (2003).

court held that "the exception to sovereign immunity for actions in excess of statutory authority or pursuant to an unconstitutional statute, applies only to actions seeking declaratory or injunctive relief, not to those seeking monetary damages." Id., 321. Thus, because sovereign immunity applied to all claims against the state for money damages, "a plaintiff who seeks to bring an action for monetary damages against the state must first obtain authorization from the claims commissioner." Id., 317. Because the plaintiff had "not received permission from the office of the claims commissioner to bring this action for money damages against the state . . . sovereign immunity bar[red] such an action . . . ." Id., 325.

In at least two subsequent cases, our appellate courts have similarly held that claims for money damages against the state or state officers acting in their official capacity arising from intentional misconduct must first receive authorization from the claims commissioner.[8] In *Prigge* v. *Ragaglia*, 265 Conn. 338, 828 A.2d 542 (2003), our Supreme Court concluded that sovereign immunity barred claims for monetary damages arising from alleged violations of constitutional rights and intentional infliction of emotional distress because "the plaintiffs have not received permission from the office of the claims commissioner to bring their claims for money damages against the state." Id., 349. Further, in *Tuchman* v. *State*, 89 Conn. App. 745, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005), the plaintiffs sought equitable and monetary relief arising from the state's alleged refusal to grant them a hazardous waste shipping permit and its subsequent issuance of a notice of violation, which the plaintiffs alleged violated their constitutional rights. The Appellate Court

---

[8] A suit against a state officer in his or her official capacity constitutes a suit against the state. See *Bloom* v. *Gershon*, 271 Conn. 96, 107, 856 A.2d 335 (2004).

held that the requirement of completing the claims commissioner procedure prior to filing suit for money damages applies "even where, as here, claims are brought pursuant to the United States constitution." Id., 752. Because the plaintiffs had not received permission from the claims commissioner, the court approved the dismissal of that portion of their suit. Id., 753.

Although these cases do not specifically say so, they necessarily stand for the proposition that the claims commissioner has authority to grant permission to sue the state for money damages for the intentional civil and constitutional torts alleged.[9] It would make no sense for the appellate courts to dismiss claims for failure to receive permission from the claims commissioner if the latter had no authority to grant such permission.

Because, then, the claims commissioner does have authority to grant permission to sue for intentional torts, and since there is no dispute that the claims commissioner can authorize suits alleging negligence, it necessarily follows that the commissioner has the power to grant permission to sue for conduct that falls in-between these two points on the possible spectrum of possible mental states. Any other conclusion would lead to the bizarre result, contrary to the rules of statutory construction, that the commissioner has the power to authorize suit for serious misconduct and for less serious misconduct but not for misconduct that falls in the middle. See *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 101, 801 A.2d 759 (2002).[10] Thus, the claims commissioner had the

---

[9] The state points to two decisions of the claims commissioner holding that the claims commissioner does not have authority to grant permission to sue for intentional torts. While an agency's interpretation of its own jurisdiction is important, one of the cases relied on by the state arose before *Miller*, and the other is simply contrary to *Miller*.

[10] It is true that, in *Miller*, the court stated that "§ 4-165 makes clear that the remedy available to plaintiffs who have suffered harm from the *negligent* actions of a state employee who acted in the scope of his or her employment must [be to] bring a claim against the state 'under the provisions of [the]

authority to grant permission to sue for the sort of wilful and malicious actions alleged here.[11]

There is no dispute that the legislature has the same authority to grant permission to sue as does the claims commissioner. This conclusion follows from the fact that their jurisdictional statutes use the same language. Cf. General Statutes § 4-160 (a); see footnote 2; with General Statutes § 4-159 (c) (enacted in 2006); footnote 4. Thus, the court must interpret the 2002 resolution authorizing the plaintiffs to sue in the present case to mean that the plaintiffs have the authority to raise the wilfulness claims that they presented to the claims commissioner.

This conclusion, however, does not mean that the state does not have any defenses. As stated earlier, and as made specific in § 4-160 (c), "[t]he rights and liability of the state in each such action [authorized by the claims commissioner or the General Assembly] shall be coextensive with and shall equal the rights and liability of private persons in like circumstances." General Statutes § 4-160 (c).[12] Thus, the state would be entitled

chapter' . . . which governs the office of the claims commissioner." (Emphasis added.) *Miller* v. *Egan*, supra, 265 Conn. 319. In light of the previous analysis, there is no basis to conclude that the court meant that negligence is the exclusive ground that the claims commissioner can hear.

[11] It is not clear where the plaintiffs' claims for nuisance would fall on this spectrum, but there is no logical argument to include wilful and intentional misconduct and not nuisance. Accordingly, it also follows that the commissioner has authority to grant permission to sue for nuisance or, in fact, "any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable." General Statutes § 4-160 (a). In view of the conclusion reached in the next section of this memorandum of decision, however, the plaintiffs may not raise nuisance in the present case.

[12] In full, General Statutes § 4-160 (c) provides: "In each action authorized by the Claims Commissioner pursuant to subsection (a) or (b) of this section or by the General Assembly pursuant to section 4-159 or 4-159a, the claimant shall allege such authorization and the date on which it was granted, except that evidence of such authorization shall not be admissible in such action as evidence of the state's liability. The state waives its immunity from liability and from suit in each such action and waives all defenses which might arise

to raise recreational use immunity in the present case if it were appropriate for a private person to do so. In addition, as stated in *Miller*, "[t]he state would not . . . be liable for the actions of its employees, when those actions were not within the scope of employment." *Miller* v. *Egan*, supra, 265 Conn. 320. Thus, if the actions of any state employee in the present case were wilful and malicious so as to constitute acts beyond the scope of their employment, the state would not be liable under traditional respondeat superior principles. Id. Subject to these concerns, the court has authority to hear the plaintiffs' allegations of wilful negligence and wilful and malicious misconduct.

## III

The state also challenges the plaintiffs' ability to raise wilful negligence and nuisance on the ground that they did not raise these theories before the claims commissioner. As stated earlier; see footnote 6; any distinction between wilful and malicious behavior, which the plaintiffs did allege in their claims, and wilful negligence, which they did not specifically allege, is so amorphous as to negate any basis for allowing one and not the other. Accordingly, the plaintiffs may raise all wilfulness claims here.

Nuisance falls into a different category. To establish nuisance a plaintiff must prove four elements: "(1) the condition . . . had a natural tendency to create danger . . . (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and]

from the eleemosynary or governmental nature of the activity complained of. The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances."

The second and third sentences, construed together, mean that the state waives governmental defenses such as sovereign immunity but not private person defenses such as those discussed previously. See *Torres* v. *Dept. of Correction*, 50 Conn. Sup. 72, 83–85, 912 A.2d 1132 (2006).

(4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries." (Internal quotation marks omitted.) *Hammond* v. *Waterbury*, 219 Conn. 569, 579, 594 A.2d 939 (1991).

Although it is true that a claimant need only present a "concise statement of the basis of the claim, including the date, time, place and circumstances of the act or event complained of"; General Statutes § 4-147 (2); the plaintiffs chose specifically to allege wilful and malicious behavior and negligence before the claims commissioner without any mention of nuisance or its unique elements. The legislature made specific reference to the files before the claims commissioner. Given that neither those files nor the resulting resolution mentions nuisance and that this court must construe the legislature's waiver of sovereign immunity in the present case strictly; see *Babes* v. *Bennett*, supra, 247 Conn. 262; there is no basis to conclude that the legislature waived the state's sovereign immunity for nuisance claims. The plaintiffs' allegations of nuisance in the present case are essentially afterthoughts by counsel. Sovereign immunity bars the presentation of these claims.

IV

The motions to dismiss are granted with respect to the nuisance claims and denied in all other respects. The previous order to close the pleadings by January 18, 2007, is vacated. The state shall file its responsive pleading within fifteen days, and the pleadings shall advance in accordance with the Practice Book.