NORMAN SARGES *v.* STATE OF CONNECTICUT ET AL.

SUPERIOR COURT        HARTFORD COUNTY        FILE No. 140772

Memorandum filed March 3, 1965

*Gross, Hyde & Williams,* of Hartford, for the plaintiff.

*Harold M. Mulvey,* attorney general, and *Frederick D. Neusner,* assistant attorney general, for the state.

*Howard, Kohn, Sprague & Fitzgerald,* of Hartford, for the defendants Ernest De Poto and Lucille De Poto.

*Regnier, Moller & Taylor,* of Hartford, for defendant A. J. Orlando Contracting Co., Inc.

SHAPIRO, J. Pursuant to chapter 53 of the General Statutes, entitled "Claims against the State," the plaintiff, on April 10, 1964, filed a notice of claim requesting permission to sue the state. General Statutes § 4-147. In this notice, he set forth all information required by § 4-147, which included a statement of the amount requested and a request for permission to sue the state. On November 6, 1964, under its docket number 648, the commission on claims granted the plaintiff permission to sue the state, and no amount to be sought in damages was specified. Thereafter, the plaintiff brought suit against various defendants, including the state, seeking damages in the amount of $75,000. The state filed a plea in abatement in which it alleges that permission to sue the state for $20,000 was sought, that permission to sue was granted on the basis of the application, that suit was brought against the state for $75,000, "which is in excess of the permission granted by the commission on claims for a suit against the state," and that "the plaintiff does not have permission to sue the state of Connecticut." To this the plaintiff demurred "because the commission on claims does not, and has no authority to, limit the amount of damages which may be claimed when said commission grants the right to sue the state."

The statutes require that the plea in abatement not only point out the defect but show how it might have been avoided. General Statutes § 52-91. The plaintiff argues that the plea does not allege openly that suit was limited to $20,000 and that the plea would require a direct allegation that the commis-

sion granted permission to sue the state for $20,000. It is true that in a plea in abatement the defect should be clearly stated and the means of avoiding should be equally clear, for the court will not aid a poor plea by drawing inferences as to its meaning. *Budd* v. *Meriden Electric R. Co.*, 69 Conn. 272, 283. However, in the case at hand, while it would have been better pleading to have had the plea state that the plaintiff does not have permission to sue the state in excess of $20,000, it is obvious as to how the plaintiff might have avoided the claimed defect. Stephenson, Conn. Civ. Proc., p. 163. To make it even more obvious, the demurrer points up a recognition of the issue raised by the plea. Even in argument, the parties made it clear that the issue raised by these pleadings was whether or not the commission has authority to limit the amount of damages to be sought against the state when permission to sue is granted, and in this case whether the plaintiff may sue the state for no more than $20,000.

The law is firmly established that the state cannot be sued except with its consent. *Anderson* v. *Argraves*, 146 Conn. 316, 319. As used in chapter 53 of the General Statutes, "claim" means a petition for the payment or refund of money by the state or for permission to sue the state. § 4-141. "There shall be a commission on claims which shall hear and determine all claims against the state except: [the exceptions are omitted since they are not relevant here]." § 4-142. "When the commission deems it just and equitable, it may authorize suit against the state on any claim for more than twenty-five hundred dollars. . . . In each such action the claimant shall allege such authorization and the date on which it was granted. . . ." § 4-160. "Claims against the state shall be resolved in such manner as may be provided by law." Conn. Const. Amend. III § 1. "Statutes in derogation of sovereignty should be strictly

construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the state or its government of any of its prerogatives, rights or remedies, unless the intention of the legislature to effect this object is clearly expressed. . . . Among the statutes in derogation of sovereignty and subject to the rule requiring strict construction in favor of the state are those allowing suits against the state or its representative, creating a claim against the state or waiving its immunity from liability . . . ." 82 C.J.S. 936, Statutes, § 391. Nothing can be taken by implication against the state. *Patton* v. *Los Angeles,* 169 Cal. 521, 532. The plaintiff contends that once the right to sue has been granted, the state waives its immunity from liability and from suit in such action (General Statutes § 4-160) and that such right to sue cannot be limited to a fixed amount in damages, and was not limited in the instant matter.

In addition to what has already been referred to in chapter 53 of the General Statutes, it should be pointed out that there is a limitation on presentation of claims. Section 4-148 (b) provides: "No claim cognizable by the commission on claims shall be presented against the state except under the provisions of this chapter." Also, under § 4-160 (d), "[i]ssues arising in such actions shall be tried to the court without a jury." The plaintiff contends that this latter is an indication that a court would not go "hog wild" in awarding damages and that the legislature did not see fit to have the commission grant the right to sue with a limitation on the amount which could be claimed in the suit.

It was house bill 4003 of the 1959 session of the General Assembly that ultimately became chapter 53 of the General Statutes. When the bill was re-

ported on the floor of the senate on June 3, 1959, the member who reported it stated in part: "[T]he commission may authorize suits against the state on claims over twenty-five hundred dollars when it deems it just and equitable." 8 S. Proc., Pt. 8, 1959 Sess., p. 4076. The court takes judicial notice of this transcript of the legislative proceedings. This may be considered as an aid to the determination of the legislative intent. *Lee* v. *Lee,* 145 Conn. 355, 358-9; *Bird* v. *Plunkett,* 139 Conn. 491, 504. Also, the intent of the General Assembly in passing an act, as expressed by it, is the controlling factor, and, in ascertaining this, the application of common sense to the language is not to be excluded. *State* v. *Bello,* 133 Conn. 600, 604.

When the court considers that chapter 53 is intended to make available a means of suing the state, where such a method did not exist, when it reviews the various sections thereof already referred to, when it considers them, as it must, to be in derogation of sovereignty and therefore to be strictly construed in favor of the state, when it considers the plain import of the language on the floor of the senate, it is led to the conclusion that to support the plaintiff's position here flies in the face of what the legislature intended. A statement of the amount requested as relates to a claim against the state (§ 4-147) and the authorization to sue the state "on any claim for more than twenty-five hundred dollars" (§ 4-160) give weight to the state's stand that when permission to sue for $20,000 was sought and the plaintiff was authorized to sue, this authorization related to the amount requested, namely $20,000. Such authorization was no carte blanche authority to the plaintiff to sue for any amount that he might choose. If this were so, as the plaintiff contends, the method of making a claim and the authorization to sue the state would not have been set forth in the

detail and manner they are set forth in chapter 53, nor would the commission be able to determine what is "just and equitable" in authorizing a suit against the state on a claim of over $2500 unless it considered the statement of the amount requested, namely, the amount sought in damages. § 4-160.

Although the plaintiff filed a motion to strike the plea in abatement on the ground that it was filed too late, this was withdrawn by him in order that the court might consider the merits of the plea in abatement and the demurrer directed to it. This the court has done.

For the reasons given, the demurrer is overruled.