******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICKY A. MORNEAU *v.* STATE OF
CONNECTICUT ET AL.
(AC 35423)

DiPentima, C. J., and Sheldon and Flynn, Js.

*Argued October 22, 2013—officially released May 20, 2014*

(Appeal from Superior Court, judicial district of
Middlesex, Domnarski, J.)

*Ricky A. Morneau*, self-represented, the appellant
(plaintiff).

*Michael K. Skold*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney general,
for the appellees (named defendant et al.).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Ricky A. Morneau, appeals following the granting of a motion to dismiss filed by the defendants[1] in the case. The self-represented[2] plaintiff raised a variety of issues and subissues in his appellate brief, contending that the court improperly granted the motion to dismiss. The defendants counter that (1) certain causes of action set forth in the plaintiff's complaint never were presented to the General Assembly and therefore were not encompassed in the waiver of sovereign immunity authorized by the General Assembly, (2) all but one of the remaining causes of action were untimely and were public emoluments in violation of article first, § 1, of the Connecticut constitution, (3) the sole remaining cause of action against two prosecutors properly was dismissed because of absolute judicial immunity, and (4) the plaintiff lacked standing to seek injunctive relief. We agree with the defendants, and, therefore, affirm the judgment of the trial court.

The following facts and procedural history are necessary for our resolution of this appeal.[3] In May, 2007, the plaintiff commenced a three count lawsuit in the United States District Court for the District of Connecticut. In that federal action, the plaintiff alleged that state Marshals Louis C. Aresco and Louis Corneroli had refused to serve process for him. The plaintiff also claimed that he had sent a letter complaining about the two marshals to then Attorney General Richard Blumenthal and that the letter thereafter was forwarded to the State Marshal Commission.[4] After conducting an investigation, the State Marshal Commission dismissed the plaintiff's complaint. See *Morneau* v. *State*, United States District Court, Docket No. 3:07-cv-00-819-JBA (D. Conn. July 7, 2008). The plaintiff further alleged that the state, Aresco, Corneroli, Blumenthal, and the State Marshal Commission violated his rights to due process and equal protection, and conspired to violate those rights. The District Court dismissed all of the plaintiff's claims, rendered judgment in favor of the defendants and declined to exercise supplemental jurisdiction over any state law claims. Id.

On August 24, 2009, the plaintiff commenced an action in the Superior Court premised on allegations that state Marshal Albenie Gagnon had overbilled the plaintiff for services and made false statements, the State Marshal Commission had denied his request for certain documents, made pursuant to the Freedom of Information Act, General Statutes § 1-200 et seq., and the state had violated motion deadlines. The plaintiff subsequently added state Marshal Timothy J. Bennett as a defendant. The state successfully moved to dismiss the action on the basis of sovereign immunity; however, the action against the two marshals remained.[5] The court concluded that the plaintiff had failed to obtain

permission to sue the state from the Claims Commissioner and thus the plaintiff's claims were barred by sovereign immunity. The August 24, 2009 action is not the subject of this appeal.

On September 8, 2009, the plaintiff filed a claim[6] with the Claims Commissioner, requesting permission to sue the state. In his claim, the plaintiff alleged: (1) overbilling by state marshals in violation of General Statutes § 52-70;[7] (2) mail fraud in violation of 18 U.S.C. § 1341 et seq.; (3) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.; and (4) violations of due process and equal protection by various state actors.[8]

The state filed a motion to dismiss, arguing, inter alia, that the Claims Commission lacked subject matter jurisdiction because the claim presented by the plaintiff was untimely. On May 3, 2010, the plaintiff filed an objection to the motion to dismiss, and included a "chronology of events" in support of his opposition. The Claims Commissioner issued a memorandum of decision on May 21, 2010. He noted that the plaintiff alleged that he had been overbilled by state marshals on two separate occasions and that these improper actions occurred in or about August, 2007. Relying on General Statutes § 4-148 (a),[9] the Claims Commissioner determined that the plaintiff's claim was untimely, and therefore he lacked subject matter jurisdiction and dismissed the entire claim. See General Statutes § 4-158 (a) (1).

In accordance with § 4-158 (b), the plaintiff asked the General Assembly to review the decision of the Claims Commissioner dismissing the claim. On June 8, 2011, the General Assembly issued a Substitute Joint Resolution No. 34 (resolution) vacating the decision of the Claims Commissioner and authorizing the plaintiff "to institute and prosecute to final judgment an action against the state to recover damages as compensation for injury to person or damage to property, or both, allegedly suffered by the [plaintiff] as set forth in said claim. Such action shall be brought not later than one year from the date of the final adoption by the General Assembly of this resolution."

The plaintiff then commenced the present action with a six count complaint, alleging: (1) violations of 42 U.S.C. § 1983[10] by the defendants; (2) conduct by the Office of the Attorney General, the Office of the State's Attorney, the State Marshal Commission, Gagnon and Bennett that constituted negligent infliction of emotional distress; (3) that the conduct of Gagnon and Bennett violated the federal RICO statute and the state Corrupt Organizations and Racketeering Activity Act (CORA), General Statutes § 53-395; (4) that the conduct of Gagnon and Bennett violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; (5) that the conduct of the attorney general's office, the state's attorney's office and the State

Marshal Commission constituted vexatious litigation in violation of General Statutes § 52-568; and (6) that the plaintiff was entitled to injunctive relief against the State Marshal Commission. The plaintiff sought monetary damages in counts one through five, and injunctive relief in count six.

Pursuant to Practice Book §§ 10-30[11] and 10-31, the defendants moved to dismiss the entire complaint filed by the plaintiff. Specifically, the defendants argued that the court lacked subject matter jurisdiction on the basis of sovereign immunity, absolute immunity and the plaintiff's lack of standing.[12] After hearing argument, the court issued a memorandum of decision granting the defendants' motion and dismissed the plaintiff's complaint. The plaintiff filed a motion to reargue, which the court denied. This appeal followed.

Before addressing the specifics of the plaintiff's claims on appeal, we set forth the legal principles regarding a motion to dismiss. "The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 200–201, 994 A.2d 106 (2010); *Bagg* v. *Thompson*, 114 Conn. App. 30, 37–38, 968 A.2d 468 (2009).

I

The plaintiff first claims that the court improperly determined the scope of the legislative waiver of sovereign immunity. The defendants counter that the trial court properly concluded that the resolution of the General Assembly waived sovereign immunity only for the causes of actions that had been raised before the Claims Commissioner and that any other actions are barred by sovereign immunity. Specifically, the defendants maintain that the court properly dismissed (1) aspects of count one regarding the actions and omissions of Attorney General George Jepsen, Assistant Attorney General Philip Miller and the State Marshal Commission,[13] (2) count two, negligent infliction of emotional distress, (3) count four, CUTPA violations, and (4) count five, vexatious litigation. We conclude that the trial court properly granted the motion to dismiss with respect to

these causes of action.

As an initial matter, we set forth the relevant legal principles regarding sovereign immunity.[14] "Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence. . . .

"[T]he sovereign immunity enjoyed by the state is not absolute. There are [three] exceptions: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority. . . . For a claim made pursuant to the first exception, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity. . . . In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Internal quotation marks omitted.) *Paragon Construction Co.* v. *Dept. of Public Works*, 130 Conn. App. 211, 221–22, 23 A.3d 732 (2011); see also *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 65–66, 23 A.3d 668 (2011); *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 706, 987 A.2d 348 (2010).

A brief discussion of the procedure that a claimant must follow to obtain permission to sue the state for monetary damages will facilitate our analysis. Our Supreme Court expressly has stated that a plaintiff seeking monetary damages against the state must first obtain authorization from the Claims Commissioner. *Miller* v.

*Egan*, 265 Conn. 301, 317, 828 A.2d 549 (2003). The Claims Commission is required by statute to make a record of each claim. General Statutes § 4-153. The Claims Commissioner may deny or dismiss the claim, order immediate payment of a claim not exceeding $20,000, recommend to the General Assembly payment of a claim exceeding $20,000 or grant permission to sue the state.[15] See General Statutes §§ 4-158 (a) and 4-160 (a). A claimant may seek review by the General Assembly in certain cases where the Claims Commissioner has denied or dismissed the claim requesting permission to sue the state. General Statutes § 4-158 (b) (1). If such request for review is made, the Claims Commissioner must submit the claim, a copy of the Claims Commissioner's findings and a hearing record of the claim to the General Assembly for review. General Statutes § 4-159 (a) (2). The General Assembly will then either confirm the decision of the Claims Commissioner; see General Statutes § 4-159 (b) (1) (A); or vacate the decision, order payment of the claim in a specified amount or authorize the claimant to sue the state. See General Statutes § 4-159 (b) (1) (B).

Pursuant to General Statutes § 4-147,[16] the plaintiff filed notice of his claim with the Claims Commissioner on September 8, 2009. The plaintiff also sent the Claims Commissioner a copy of a letter that he had written to Blumenthal, regarding the plaintiff's intention to seek legal recourse against the state on the following bases: (1) overbilling by state marshals, (2) mail fraud by state marshals in violation of federal law, (3) violation of RICO, (4) violation of Connecticut and federal due process and equal protection rights and, (5) conspiracy. As a remedy, the plaintiff sought monetary damages in excess of $15,000, interest and costs, equitable relief and permission to sue the state. The Claims Commission granted the defendants' motion and dismissed the plaintiff's claim. The plaintiff successfully obtained a legislative reversal of the decision of the Claims Commissioner. The joint resolution of the General Assembly provided: "That the decision of the Claims Commissioner . . . ordering the dismissal of the claim against the state in excess of seven thousand five hundred dollars of [the plaintiff], is vacated and the claimant is authorized to institute and prosecute to final judgment an action against the state to recover damages as compensation for injury to person and damage to property, or both, *allegedly suffered by the claimant as set forth in said claim*. Such action shall be brought not later than one year from the date of the final adoption by the General Assembly of this resolution." (Emphasis added.)

The plaintiff then commenced this action, and in his operative complaint set forth the following causes of action: (1) violations of 42 U.S.C. § 1983 by various state actors, (2) negligent infliction of emotional distress by various state actors, (3) RICO and CORA violations by

state marshals, (4) CUTPA violations by Bennett and Gagnon, (5) vexatious litigation against the attorney general's office and the State Marshal Commission for raising groundless or vexatious defenses in various proceedings, and (6) injunctive relief.

The trial court concluded that the resolution of the General Assembly authorizing the plaintiff to bring his lawsuit against the state was a waiver of sovereign immunity and therefore was to be construed narrowly. It then determined that there was nothing in the plaintiff's initial claim to the Claims Commissioner that would support the distinct legal elements for the causes of action of negligent infliction of emotional distress, violations of CUTPA and vexatious litigation, as well as the specific § 1983 claims against the attorneys general and the State Marshal Commission. We agree with the analysis of the trial court.

The doctrine of sovereign immunity provides a strong presumption that the state is immune from suit or liability. *Hicks* v. *State*, 297 Conn. 798, 801, 1 A.3d 39 (2010). Although the legislature is statutorily authorized to waive sovereign immunity by vacating a denial of permission to sue from the Claims Commissioner, that did not occur in the present case with respect to the § 1983 claims against the attorneys general[17] and the State Marshal Commission for failing to comply with a formal written opinion by the Office of the Attorney General, the negligent infliction of emotional distress, CUTPA and vexatious litigation claims found in portions of count one, and all of counts two, four and five of the plaintiff's complaint.

The language of the joint resolution expressly waived sovereign immunity only for the claim presented to the Claims Commissioner. The causes of action in the subsequent complaint discussed in this part of our opinion were not included in the proceedings before the Claims Commission and never were addressed or considered by the General Assembly. Instead, the plaintiff first raised these particular legal theories in this complaint. Moreover, our review of the materials before the Claims Commission, and then the General Assembly, reveals no allegation that would support the elements of these distinct causes of action. For example, the elements for negligent infliction of emotional distress are: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003).[18] The materials submitted by the plaintiff to the Claims Commissioner contain nothing to indicate that these elements were presented to the General Assembly. We note that § 4-147 provides in relevant part that

the notice to the Claims Commissioner "shall be for informational purposes only and shall not be subject to any formal or technical requirements, *except as may be necessary for clarity of presentation and facility of understanding*." (Emphasis added.) While the plaintiff was not required to set forth a formal declaration of the particular causes of action he sought to bring against the state, he needed to include information that would clarify the nature of the waiver sought and ensure that the Claims Commissioner, and subsequently the General Assembly which, reviewed the action of the Claims Commissioner, would have an understanding of the nature of that waiver. See, e.g., *Burgess* v. *State*, 50 Conn. Supp. 271, 281–82, 920 A.2d 383 (2007) (where claimant raised allegations of wilful and malicious behavior and negligence, but failed to include any mention of nuisance before Claims Commissioner, and General Assembly did not mention that cause of action in its resolution, there was no basis to conclude General Assembly had waived sovereign immunity for that particular cause of action, and court described nuisance allegations as afterthoughts of counsel and subject to granting of motion to dismiss).

Moreover, as we noted previously, our law recognizes that statutes in derogation of sovereign immunity are strictly construed. See, e.g., *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 711, 937 A.2d 675 (2007). Where there is any doubt about its meaning or intent, we should give it the effect that makes the least rather than the most change in sovereign immunity. Id., 712. We note that the rationale of *Sarges* v. *State*, 26 Conn. Supp. 24, 209 A.2d 886 (1965), bolsters our analysis. In *Sarges*, the plaintiff obtained permission to sue the state for $20,000 in damages. Id., 25. In his lawsuit, however, the plaintiff sought to recover $75,000. The state successfully prosecuted a plea in abatement on the ground that the suit for damages was in excess of those for which permission to sue was granted. Id. Relying on the principle of strict construction of statutes that allow lawsuits against the state, the court reasoned that "[n]othing can be taken by implication against the state." Id., 27. It further noted that the permission to sue the state was related to the $20,000 requested and that "[*s*]*uch authorization was no carte blanche authority to the plaintiff to sue* for any amount that he might choose." (Emphasis added.) Id., 28; see also *184 Windsor Ave., LLC* v. *State*, Superior Court, judicial district of Hartford, Docket No. CV-03-4018076 (May 16, 2008) (concluding that claim for damages could not exceed amount sought in notice of claim to Claims Commissioner); *Calvert* v. *State*, Superior Court, judicial district of New London at Norwich, Docket No. 105317 (March 10, 1995) (14 Conn. L. Rptr. 110) (same); cf. *Merly* v. *State*, 211 Conn. 199, 211, 558 A.2d 977 (1989) (General Assembly rejected Claims Commissioner's recommendation that no award should be made on plaintiff's claim, but that did not

imply legislative grant of authority to sue state).

We agree with the trial court that the General Assembly never waived sovereign immunity with respect to these causes of action. Absent such a waiver, the general presumption applies, and the defendants are entitled to sovereign immunity. See, e.g., *Chief Information Officer* v. *Computers Plus Center, Inc.*, 310 Conn. 60, 91, 74 A.3d 1242 (2013); *Lagassey* v. *State*, 268 Conn. 723, 732, 846 A.2d 831 (2004). We conclude, therefore, that the court properly granted the motion to dismiss with respect to the part of count one regarding the § 1983 allegations against the attorneys general and the State Marshal Commission for refusing to comply with a formal written opinion from the Office of the Attorney General, the count alleging negligent infliction of emotional distress (count two), the count alleging CUTPA violations (count four), and the count alleging vexatious litigation (count five).

II

The plaintiff next claims that the court improperly concluded that the resolution of the General Assembly was an unconstitutional public emolument with respect to his remaining § 1983 allegations against Gagnon, Bennett and the State Marshal Commission[19] in count one and the count alleging federal RICO and state CORA violations (count three). The defendants counter[20] that the resolution did not contain a statement of public purpose and benefited only the plaintiff, and therefore the court properly determined that it violated the Connecticut constitution. We agree with the defendants.

Section 4-148 (a) sets forth the time frame in which a claimant must present a claim to the Claims Commissioner. Specifically, that subsection provides that "no claim shall be presented . . . but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complaint of." General Statutes § 4-148 (a).

Subsection (b) of § 4-148 provides a legislative exception to the time frame for obtaining a waiver of sovereign immunity. "The General Assembly may, by special act, authorize a person to present a claim to the Claims Commissioner after the time limitations set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose. . . ." General Statutes § 4-148 (b). In the present case, the trial court determined that the plaintiff's § 1983 claims, other than those against the attorneys general and the State Marshal Commission,

and his claims that Bennett and Gagnon violated the RICO and CORA statutes were untimely pursuant to § 4-148 (a). The court further determined that the resolution purporting to waive the untimely portion of his claim constituted an unconstitutional public emolument. The plaintiff challenges both of these determinations, and therefore our inquiry is twofold: Whether the court properly decided that these causes of action were untimely and, if so, whether it properly concluded that the resolution did not serve a public purpose and therefore was unconstitutional. We conclude that the court properly granted the defendants' motion to dismiss with respect to these counts of the plaintiff's complaint.

A

The first question for this court is whether the trial court properly concluded that the balance of the plaintiff's § 1983 allegations against the State Marshal Commission and his allegations that Bennett and Gagnon violated the federal RICO and state CORA statutes were untimely. As noted previously, § 4-148 (a) sets forth the time frame in which claims must be brought to the Claims Commissioner. In the present case, the plaintiff sent notice to the Claims Commissioner on September 8, 2009. The court concluded that the plaintiff had knowledge of actionable harms prior to September 8, 2008, and therefore that his claim was made outside of the applicable statute of limitations. We agree.

A discussion of *Lagassey* v. *State*, supra, 268 Conn. 723, will facilitate our analysis. In that case, the plaintiff, the executrix of an estate, sought to recover damages against state employees for medical malpractice. Id., 725. The Claims Commissioner denied the claim as untimely, and the General Assembly subsequently authorized her claim via a special act. Id., 725–26. The state defendants again sought to dismiss the claim, this time on the ground that the special act was unconstitutional as an exclusive public emolument in violation of article first, § 1, of the constitution of Connecticut. Id., 726. In her appeal, the plaintiff argued that the claim was not untimely because the one year statute of limitations set forth in § 4-148 (a) did not accrue until she discovered the injury in the exercise of reasonable care. Id., 731.

In its analysis, our Supreme Court considered General Statutes § 52-584[21] when it interpreted § 4-148 (a). "Both statutes provide that the limitation period begins to run when a plaintiff either sustains or discovers the injury or, in the exercise of reasonable care, should have discovered the injury, and both statutes contain a three year period of repose." Id., 738. It then set forth the legal standard for determining when the limitation period commences for actions in negligence: "The limitation period for actions in negligence begins to run on the date when the injury is first discovered or in the exercise of reasonable care should have been discov-

ered. See General Statutes §§ 4-148 (a) and 52-584. In this regard, the term injury is synonymous with legal injury or actionable harm. Actionable harm occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action. . . . A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence; they are therefore necessary ingredients for actionable harm. . . . Furthermore, actionable harm may occur when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, and that the injury was caused by the negligent conduct of another. . . . In this regard, the harm complained of need not have reached its fullest manifestation in order for the limitation period to begin to run; a party need only have suffered some form of actionable harm." (Citations omitted; internal quotation marks omitted.) *Lagassey* v. *State*, supra, 268 Conn. 748–49.

In the present case, the plaintiff alleged in his complaint that Gagnon received his fees between August 24, 2007, and September 14, 2007. The trial court also examined the "chronology of events" submitted as part of the plaintiff's objection to the defendants' motion to dismiss that he filed with the Claims Commissioner. In that chronology, the plaintiff stated that in May, 2008, after examining the finances of state marshals, he determined that Gagnon never had claimed the $1329.20 in fees that he had billed the plaintiff. The plaintiff also noted that in May, 2008, after conducting his examination, he was aware that some state marshals "had generated additional income by illegal billing, or by claiming they performed services which would have been impossible considering the size of income claimed."

The trial court concluded that in May, 2008, the plaintiff discovered the injury and suffered actionable harm because he had knowledge of the specific facts that put him on notice of the nature of the injury with respect to Gagnon, and Bennett as well. We agree with this conclusion. Thus, the claim stemming from the alleged overbillings by Gagnon and Bennett, which was filed on September 8, 2009, was untimely. The same analysis applies to the plaintiff's remaining claims against the State Marshal Commission. The chronology submitted by the plaintiff, in conjunction with the files from the various underlying legal proceedings, established his knowledge of the events underlying the claim that the State Marshal Commission had violated his constitutional rights by dismissing his complaints against Marshals Aresco and Corneroli and denying his Freedom of Information Act request. These materials established that the claim was not filed until after the one year period of limitation had run.

On appeal, the plaintiff argues that, pursuant to General Statutes § 52-595[22] and the doctrine of contra non valentem,[23] the statute of limitation should not have begun to run. These specific arguments, however, do not appear to have been raised before the trial court and were not addressed in the court's memorandum of decision.[24] We decline to consider them for the first time on appeal. "Only in [the] most exceptional circumstances can and will [appellate courts] consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 498, 863 A.2d 680 (2005). We conclude, therefore, that the court properly concluded that the claims against the marshals and the State Marshal Commission were untimely.

B

We now turn to the question of whether the resolution passed by the General Assembly granting the plaintiff permission to bring suit against the marshals and the State Marshal Commission constituted an exclusive public emolument in violation of article first, § 1, of the Connecticut constitution.[25] We agree with the trial court that the resolution did not serve a public purpose and, therefore, that the resolution was passed in violation of the Connecticut constitution's prohibition against public emoluments.[26]

"To prevail under article first, § 1, of our constitution, the state must demonstrate that the sole objective of the General Assembly is to grant personal gain or advantage to an individual. . . . If, however, an enactment serves a legitimate *public* purpose, then it will withstand a challenge under article first, § 1. . . .

"The scope of our review as to whether an enactment serves a public purpose is limited. [W]hat constitutes a public purpose is primarily a question for the legislature, and its determination should not be reversed by the court unless it is manifestly and palpably incorrect. . . . In determining whether a special act serves a public purpose, a court must uphold it unless there is no reasonable ground upon which it can be sustained. . . . Thus, if there be the least possibility that [the special act] will be promotive in any degree of the public welfare . . . we are bound to uphold it against a constitutional challenge predicated on article first, § 1 [of the state constitution]. . . .

"In this regard, although a special act passed under § 4-148 (b) will undoubtedly confer a direct benefit upon a particular claimant, we have found a public purpose if it remedies an injustice done to that individual for *which the state itself bears responsibility*. . . . In such circumstances, the benefit conferred upon a private party by the legislature may be viewed as incidental to the overarching public interest that is served in remedy-

ing an injustice caused by the state. . . .

"By contrast, we have consistently held that legislation seeking to remedy a procedural default for which the state is not responsible does not serve a public purpose and, accordingly, runs afoul of article first, § 1, of the state constitution. . . . Similarly, where a special act has allowed a person named therein to bring a suit based upon a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment." (Citation omitted; emphasis altered; internal quotation marks omitted.) *Kelly* v. *University of Connecticut Health Center*, 290 Conn. 245, 257–59, 963 A.2d 1 (2009); *Chotkowski* v. *State*, 240 Conn. 246, 259–60, 690 A.2d 368 (1997); *Merly* v. *State*, supra, 211 Conn. 212–13.

Section 32 of the resolution authorizes the plaintiff, and only the plaintiff, to commence a lawsuit against the state for his alleged injuries, as detailed in the claim presented to the Claims Commissioner. Notably absent in this case was a declaration that it served a public purpose, nor can we discern one. It merely provided the plaintiff with an exclusive and private benefit. "No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual." (Internal quotation marks omitted.) *Kelly* v. *University of Connecticut Health Center*, supra, 290 Conn. 260. Although we are mindful of the heavy burden assumed by those who challenge the constitutionality of legislative actions; see id., 257; we conclude that the court properly determined that the resolution in the present case violated the state constitution's prohibition against public emoluments, and correctly dismissed the § 1983 claim against the State Marshal Commission contained in count one of the plaintiff's complaint and the claim alleging RICO and CORA violations by Bennett and Gagnon set forth in count three.

### III

We now address the plaintiff's § 1983 allegations against Chief State's Attorney Kevin T. Kane and State's Attorney Scott J. Murphy for violating his constitutional rights by failing to prosecute the state marshals for larceny, illegal billing and making false statements, as set forth in count one of the complaint. The court concluded that a prosecutor's decision not to initiate prosecution is cloaked with absolute immunity.[27] On appeal, the plaintiff appears to argue that his claim against the two prosecutors was timely pursuant to the continuing course of conduct doctrine. We agree with the trial court that this claim fails as a result of absolute immunity afforded to prosecutors with respect to the decision to not initiate prosecution.

In *Imbler* v. *Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976), the United States Supreme Court held that a state prosecutor acting within the scope of his duties in initiating and pursuing a criminal prosecution is entitled to absolute immunity and is not amenable to suit under § 1983. Id., 410. The court reasoned that § 1983 should be read in harmony with existing tort principles and defenses, rather than in derogation of them, and that the well settled common-law immunity of a prosecutor also applies to § 1983 claims. Id., 418–24; see also *Briscoe* v. *LaHue*, 460 U.S. 325, 334, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983).

The Supreme Court has made it clear that not all actions of a prosecutor are entitled to such immunity, but only those that are "intimately associated with the judicial phase of the criminal process . . . ." *Imbler* v. *Pachtman*, supra, 424 U.S. 430; see also *Mangiafico* v. *Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (government attorney entitled to absolute immunity when functioning as advocate for state in way that is intimately associated with judicial process); *Dory* v. *Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (same). "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley* v. *Fitzsimmons*, 509 U.S. 259, 273, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). When a prosecutor provides legal advice to the police; *Burns* v. *Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991); performs the investigative role normally done by a member of the police; *Buckley* v. *Fitzsimmons*, supra, 273; or makes comments to the media; id., 277–78; he or she is not entitled to absolute immunity. See also *Haynesworth* v. *Miller*, 820 F.2d 1245, 1268 (D.C. Cir. 1987) ("[t]he courts have drawn rough boundaries around the class of absolutely-immunized prosecutorial activities, and have treated functions such as filing charges, plea-bargaining, presenting evidence, and negotiating parole as falling within the protected sphere, and those such as executing search warrants, interrogating suspects, disseminating information to the press, and storing evidence as meriting only qualified immunity" [footnotes omitted]), overruled in part on other grounds by *Hartman* v. *Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006).

In describing the role of a prosecutor in Connecticut, our Supreme Court has stated: "The functions of a state's attorney are not purely those of an executive officer. As a representative of the people of the state, he is under a duty not solely to obtain convictions but, more importantly, (1) to determine that there is reasonable ground to proceed with a criminal charge . . . (2) to see that impartial justice is done the guilty as well as the innocent; and (3) to ensure that all evidence tending to aid in the ascertaining of the truth be laid

before the court, whether it be consistent with the contention of the prosecution that the accused is guilty. . . . The state's attorney, thus, is an officer charged with important duties and responsibilities in the administration of justice. Such duties of a state's attorney are entirely consistent with judicial power as prescribed by our constitution." (Citations omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 556–57, 663 A.2d 317 (1995). It also recognized: "It is in part due to the recognition that prosecutors are an integral part of the judicial system that courts have granted absolute immunity from civil actions to prosecutors. . . . Prosecutorial immunity derives from the immunity attached to judicial proceedings. . . . Such immunity covers acts that were performed by a prosecutor as an integral part of the judicial process." (Citations omitted; internal quotation marks omitted.) Id., 567–68; see also *Carrubba* v. *Moskowitz*, 274 Conn. 533, 541, 877 A.2d 773 (2005); *Barese* v. *Clark*, 62 Conn. App. 58, 61, 773 A.2d 946 (2001) ("Our Supreme Court, the United States Supreme Court and the federal courts of appeal have long recognized the existence of, and the need for, prosecutorial immunity. Such immunity exists to allow prosecutors at the state and federal level to be free to perform their essential role in the judicial process without the possibility of civil liability hanging over their head as a sword of Damocles.").

The remaining question, therefore, is whether the decision of Murphy and Kane not to prosecute the state marshals is cloaked with absolute immunity. We conclude that it is, and therefore, the court properly granted the motion to dismiss. As noted in *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 556–57, the determination of whether there are reasonable grounds to proceed with a criminal charge is a duty of a state's attorney that is consistent with the judicial power prescribed by the Connecticut constitution. This function is an integral part of the judicial process, and thus is entitled to absolute immunity. Id., 567. We also note that the United States Court of Appeals for the Second Circuit expressly held in the *Schloss* v. *Bouse*, 876 F.2d 287, 290 (2d Cir. 1989), that "absolute immunity must also protect the [state] prosecutor from [42 U.S.C. § 1983] damages suits based on his decision *not* to prosecute." (Emphasis in original.) See also *Barrett* v. *United States*, 798 F.2d 565, 572 (2d Cir. 1986) (federal prosecutor entitled to absolute immunity for decision not to prosecute); *Dacey* v. *Dorsey*, 568 F.2d 275, 276–78 (2d Cir.) (United States attorney absolutely immune from suit alleging he failed to carry out his duties), cert. denied, 436 U.S. 906, 98 S. Ct. 2238, 56 L. Ed. 2d 405 (1978). The Second Circuit reasoned that many, though not all, of the reasons supporting absolute immunity for the decision of a prosecutor to commence a prosecution also apply when there is a decision to not prosecute.

*Schloss* v. *Bouse*, supra, 290. Applying these precedents to the present case, we agree with the trial court that Kane and Murphy were cloaked in absolute immunity with respect to their decision not to prosecute the state marshals, and therefore that the court properly granted the motion to dismiss this cause of action.[28]

### IV

The plaintiff's final claim is that the court improperly determined that he lacked standing to seek injunctive relief[29] in the form of a court order eliminating the present marshal system and replacing it with a framework described in his complaint. The court concluded that the plaintiff had failed to allege or demonstrate that he was likely to suffer irreparable harm in the future as a result of improper conduct by state marshals and that, therefore, he lacked standing to bring a claim for injunctive relief. We agree with the trial court and therefore conclude that it properly granted the defendants' motion to dismiss count six of the plaintiff's complaint.[30]

"[S]tanding is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Nevertheless, [s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 310 Conn. 797, 820, 82 A.3d 602 (2014).

"Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]. Similarly, standing exists to attempt to vindicate arguably protected interests. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming

aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 214–15, 982 A.2d 1053 (2009); *Andross* v. *West Hartford*, 285 Conn. 309, 322–24, 939 A.2d 1146 (2008); *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 178, 740 A.2d 813 (1999) ("[t]o establish standing to raise an issue for adjudication, a complainant must make a colorable claim of direct injury").

The court concluded that the plaintiff had failed to allege or demonstrate that he was likely to suffer irreparable harm and that he therefore lacked standing to bring a cause of action for prospective injunctive relief. After reviewing the plaintiff's complaint, we agree with the analysis and conclusion of the trial court. The plaintiff has failed to establish, on a prospective basis, that he likely would be harmed as a result of illegal conduct by state marshals. Accordingly, we conclude that the court properly determined that the plaintiff lacked standing to bring a claim for injunctive relief as alleged in count six of the complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendants are the state, former Attorney General Richard Blumenthal, Assistant Attorney General Philip Miller, former director of the State Marshal Commission James Neil, the following members or former members of the State Marshal Commission: Dennis F. Kerrigan, Marie Knudsen, William Cote, the Honorable William T. Cremins and Joseph Ubaldi, Chief State's Attorney Kevin T. Kane, State's Attorney Scott J. Murphy and state Marshals Albenie Gagnon and Timothy J. Bennett. The trial court noted that Attorney General George Jepsen is listed in the plaintiff's complaint as a defendant, but is not listed on the summons.

[2] "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . This is because [a] party who, unskilled in such matters, seeks to remedy some claimed wrong by invoking processes which are at best technical and complicated, is very ill advised and assumes a most difficult task. . . . Nonetheless, while the court exhibits some degree of leniency toward a pro se appellant, it cannot entirely disregard established principles of law." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 861–62, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005).

[3] Due to the procedural posture of this case, we are mindful that we must "take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 305, 828 A.2d 549 (2003).

[4] According to its website, the State Marshal Commission, an Executive Branch commission, "was created by Public Act 00-99, in 2000. Chapter 78 of the Connecticut General Statutes sets forth the law covering the state marshal system. Pursuant to [Connecticut General Statutes §] 6-38b the

State Marshal Commission consists of eight members appointed by the specified executive, judicial and legislative branch authorities. The term for members is three years. There are also two Ex-Officio members of the Commission from the State Marshals Advisory Board.

"The State Marshal Commission generally meets monthly to conduct business under its statutory mandate. The Commission implements examination and appointment procedures as well as training for new appointees. By statutes, regulations and policies, the Commission also is involved in many functions, including but not limited to setting training requirements, professional standards, audit policies, *disciplinary protocol*, restraining order rotations and *administrative procedures for the efficient and fair operation of the state marshal system*." (Emphasis added.) Department of Administrative Services, "State Marshal Commission," available at http://das.ct.gov/cr1.aspx?page=107 (last visited May 6, 2014).

[5] The plaintiff did not directly appeal from the judgment of the court dismissing that August 24, 2009 action against the state. Nearly three years later, the plaintiff filed a motion to open that judgment, which the court denied. This court recently affirmed that judgment. See *Morneau* v. *State*, 148 Conn. App. 68, 83 A.3d 729, cert. denied, 311 Conn. 933, A.3d (2014). The claims against Gagnon and Bennett in the August 24, 2009 action remain pending before the Superior Court. On March 14, 2014, the court, *Young*, *J.*, entered a scheduling order that included a jury trial date of January, 2015. See *Morneau* v. *State*, Superior Court, judicial district of New Britain, Docket No. CV-09-5013995 (August 26, 2009), aff'd, 148 Conn. App. 68, 83 A.3d 729, cert. denied, 311 Conn. 933, A.3d (2014).

[6] The term "claim" in this context is statutorily defined as "a petition for the payment or refund of money by the state or for permission to sue the state . . . ." General Statutes § 4-141.

[7] As noted in the defendants' brief, the plaintiff referenced General Statutes § 50-70. As no such statute exists, this appears to have been a scrivener's error. General Statutes § 52-70 provides: "Each officer serving any process shall endorse thereon the items of his fees, with the number of miles traveled by him. *If any officer demands and receives on any civil process more than his legal fees, he shall pay threefold the amount of all the fees demanded to the defendant in the action in which the illegal fees were exacted, if such fees have been paid by the defendant, otherwise to the plaintiff in such action.* The provisions of this section shall not apply to any case in which the fees claimed to be illegal have been taxed and allowed by the proper authority." (Emphasis added.)

[8] In the memorandum of decision in the present case, the trial court explained the constitutional violations alleged by the plaintiff as follows: "[T]he state violated the plaintiff's rights under the due process and equal protection clauses when: (1) the State Marshal Commission dismissed the plaintiff's complaints against Aresco and Corneroli; (2) the State Marshal Commission failed to provide the plaintiff with certain documents pursuant to a [freedom of information] request; (3) various state's attorneys refused the plaintiff's demand that they prosecute the marshals for billing theft; and (4) the state continued to use Gagnon's services."

[9] General Statutes § 4-148 (a) provides: "Except as provided in subsection (b) of this section, no claim shall be presented under this chapter but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of."

[10] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[11] Practice Book § 10-30 provides in relevant part: "(a) A motion to dismiss shall be used to assert: (1) lack of jurisdiction over the subject matter . . . . (c) This motion shall always be filed with a supporting memorandum of law and, where appropriate, with supporting affidavits as to facts not apparent on the record."

[12] The plaintiff filed a "motion to strike" the defendants' motion to dismiss. The court considered this as an objection to the motion to dismiss. See,

e.g., *Young* v. *Bridgeport*, 135 Conn. App. 699, 705, 42 A.3d 514 (2012) (substance of motion controls its outcome rather than title used by party); *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 320 n.7, 898 A.2d 197 (same), cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006).

[13] The trial court concluded that "[t]his also applies to certain allegations set forth in count one against the attorney general and the assistant attorney general for their alleged failure to bring a civil action against the marshals, as well as the allegation that the State Marshal Commission refused to comply with a former written opinion from the Office of the Attorney General. These allegations were not mentioned in the initial notice of claim and are therefore dismissed."

[14] "The source of sovereign immunity power in the state of Connecticut is the constitution, and it is recognized that a sovereign is immune from suit on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." (Internal quotation marks omitted.) *Lipwich* v. *Frankel*, 44 Conn. App. 651, 656, 691 A.2d 1099 (quoting *Horton* v. *Meskill*, 172 Conn. 615, 623, 376 A.2d 359 [1977]), cert. denied, 241 Conn. 907, 695 A.2d 538 (1997).

[15] General Statutes § 4-160 (c) provides: "In each action authorized by the Claims Commissioner pursuant to subsection (a) or (b) of this section or by the General Assembly pursuant to section 4-159 or 4-159a, the claimant shall allege such authorization and the date on which it was granted, except that evidence of such authorization shall not be admissible in such action as evidence of the state's liability. *The state waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of.* The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances." (Emphasis added.)

[16] General Statutes § 4-147 provides in relevant part: "Any person wishing to present a claim against the state shall file with the Office of the Claims Commissioner a notice of claim, in duplicate, containing the following information: (1) The name and address of the claimant; the name and address of his principal, if the claimant is acting in a representative capacity, and the name and address of his attorney, if the claimant is so represented; (2) a concise statement of the basis of the claim, including the date, time, place and circumstances of the act or event complained of; (3) a statement of the amount requested; and (4) a request for permission to sue the state, if such permission is sought. A notice of claim, if sent by mail, shall be deemed to have been filed with the Office of the Claims Commissioner on the date such notice of claim is postmarked. . . . The Office of the Claims Commissioner shall promptly deliver a copy of the notice of claim to the Attorney General. Such notice shall be for informational purposes only and shall not be subject to any formal or technical requirements, except as may be necessary for clarity of presentation and facility of understanding."

[17] In paragraph 8 of the first count of his complaint, the plaintiff alleged that the attorneys general failed to perform their preexisting legal duties and failed to suppress criminally operated businesses by not enforcing the CUTPA or civil RICO statutes. In paragraph 9 of the first count, the plaintiff claimed that he was damaged financially by the failure of the attorney general's office to perform those duties and, thus, his state and federal constitutional rights to due process and equal protection were violated. In paragraph 10 of the first count, the plaintiff asserted that Miller engaged in wilful misconduct, and in paragraph 11, he claimed that Miller's filing of motions in the underlying proceedings constituted a violation of rule 3.3 (c) of the Rules of Professional Conduct.

[18] Additionally, the plaintiff's claim to the Claims Commission does not encompass or support his later allegations that the attorneys general or the State Marshal Commission violated his rights under § 1983, that state actors violated CUTPA to his detriment, or that the attorney general's office or the State Marshal Commission engaged in vexatious litigation against the defendant.

[19] The plaintiff had alleged that the State Marshal Commission violated his constitutional rights by dismissing his complaints against Aresco and Corneroli and denying his request made pursuant to the Freedom of Information Act.

[20] The defendants also contend that the resolution does not validly waive sovereign immunity because it does not comply with the requirements of § 4-148 (b). That statute provides: "The General Assembly may, by special act, authorize a person to present a claim to the Claims Commissioner after

the time limitation set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose. Such finding shall not be subject to review by the Superior Court."

General Statutes § 4-148 (b). Specifically, the defendants argue that "[t]he Resolution purporting to authorize the Plaintiff's action does not comply with those requirements because: (1) it is not a special act of the Legislature; (2) it does not include an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose; and (3) it authorized direct suit in the Superior Court instead of permitting Plaintiff to proceed with his claims before the Claims Commissioner."

In its memorandum of decision, the court noted that "[i]n regard to the defendants' . . . two arguments [regarding the use of a special act rather than a resolution and authorizing suit in the Superior Court], case law is demonstrably unclear as to whether the General Assembly must state its findings specifically in a 'special act' and whether the General Assembly has authority to allow claims to be submitted directly to the Superior Court." Rather than deciding the case on these bases, the court instead focused on the constitutionality of the resolution under the public emolument analysis. We follow the path taken by the trial court with respect to this issue.

[21] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date or the act or omission complained of . . . ."

[22] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

[23] Contra non valentem is a judicially created doctrine that, inter alia, appears to be analogous to the doctrine codified in § 52-595. See, e.g., *Rajnowski* v. *St. Patrick's Hospital*, 564 So. 2d 671, 674 (La. 1990). Our research does not reveal any Connecticut case citing to this doctrine.

[24] The trial court did consider and reject the plaintiff's argument that the continuing course of conduct doctrine tolled the statute of limitations. Specifically, the court concluded that the plaintiff had not established that there was an ongoing duty or a special relationship between the plaintiff and the defendants.

[25] Article first, § 1, of the constitution of Connecticut provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

[26] In his brief, the plaintiff suggests that the court was biased when it abused its discretion in concluding that the joint resolution constituted a public emolument. He further claims to provide five examples of bias or malice since commencing this action and that ten unnamed members of the Connecticut Bar Association have violated law, the Rules of Professional Conduct or judicial canons for the purpose of vexing and troubling his lawsuit. Although we consider a claim of judicial bias to be of a serious nature, it must be presented properly to both the trial court and this court. These references fail to demonstrate how they were raised before and addressed by the trial court. See *Lynn* v. *Lynn*, 145 Conn. App. 33, 37–38, 74 A.3d 506 (2013). We therefore decline to consider this claim. See *Antogiovanni* v. *America's Homes & Communities Real Estate, LLC*, 130 Conn. App. 286, 290 n.4, 22 A.3d 706, cert. denied, 302 Conn. 939, 28 A.3d 993 (2011).

[27] "Judges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority. . . . The concern for the integrity of the judicial process underlying the absolute immunity of judges also is reflected in the extension of absolute immunity to certain others who perform functions closely associated with the judicial process. . . . Included among these other are prosecutors, administrative law judges and hearing examiners, grand jurors and witnesses in judicial proceedings." (Citations omitted; internal quotation marks omitted.) *Oliva* v. *Heller*, 839 F.2d 37, 39 (2d Cir. 1988).

[28] As a result of our conclusion that the actions of Kane and Murphy are entitled to absolute immunity, we need not address the plaintiff's contentions

regarding the merits or timeliness of his claims against the two prosecutors.

[29] Our Supreme Court has stated that "[i]njunctive relief is appropriate only where two conditions are met: the plaintiff must allege and prove that absent such relief he will suffer irreparable injury; and he must allege and demonstrate that he has no adequate remedy at law." *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, 178 Conn. 586, 592, 424 A.2d 285 (1979); see also *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 562–63, 668 A.2d 367 (1995).

[30] "The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § 10-31 (a)." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213–14, 982 A.2d 1053 (2009).

---